**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**

| | | |
|---|---|---|
| Dao Travels, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No.: 2:14-cv-01967-PMD |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| Charleston Black Cab Company and | ) | |
| Sam Mustafa, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

This matter is before the Court on Defendants Charleston Black Cab Company ("CBCC") and Sam Mustafa's ("Mustafa") (collectively "Defendants") Motion to Dismiss (ECF No. 11). The present action is also before the Court on Plaintiff Dao Travels, LLC's ("Plaintiff") Motion for Preliminary Injunction (ECF No. 17). The pending motions have been fully briefed, and the Court held a hearing on January 20, 2015. At the conclusion of the hearing, the Court denied Defendants' Motion to Dismiss; however, the Court reserved ruling on Defendants' argument that Plaintiff's Complaint fails to state a claim against Mustafa. The Court also deferred ruling on Plaintiff's Motion for Preliminary Injunction to allow the Parties to conduct expedited discovery. This Order is intended to supplement and, where necessary, amend the pronounced Order of the Court. For the reasons set forth herein, the Court denies Defendants' Motion to Dismiss as to Plaintiff's claims against Mustafa. As for Plaintiff's request for preliminary injunctive relief, the Court amends its oral ruling deferring formal action pending discovery and instead denies the Motion for Preliminary Injunction without prejudice and with leave to renew and refile upon the completion of discovery.

## BACKGROUND

Accepting the truth of the allegations in Plaintiff's Complaint and viewing all inferences in the light most favorable to Plaintiff, *e.g.*, *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011), the facts, for purposes of ruling on Defendants' Motion to Dismiss, are as follows. Plaintiff is a South Carolina limited liability company providing transportation and taxi services in the Charleston area under the name of Charleston Black Cab Company. Plaintiff brought this suit against CBCC, a local competitor in the taxicab business, as well as Mustafa, who Plaintiff alleges is an officer of CBCC, asserting three causes of action related to Defendants' purported trademark infringement.

Plaintiff claims ownership of a common law trademark right in the mark "Charleston Black Cab Company" (the "Mark"). Plaintiff alleges that it purchased the Mark and its associated goodwill from Yellow Cab Company of Charleston on or about January 23, 2014, by way of a Trademark Assignment, a copy of which is attached to the Complaint. Plaintiff contends that since that time it has used the Mark for marketing purposes in both print and electronic forms, as well as on its website, www.charlestonblackcabcompany.com. Plaintiff further alleges that since 2005, Plaintiff and its predecessors in the Mark have used the Mark in print and electronic marketing and on the same website domain name mentioned above in association with transportation and taxi services rendered in the Charleston area. According to Plaintiff, consumers have come to recognize the Mark as associated with Plaintiff and its services. Through its use of the Mark, and that of its predecessors, Plaintiff asserts ownership of common law rights in the Mark.

Plaintiff alleges that, under the direction of Mustafa, CBCC has used and continues to use the same or similar mark—Charleston Black Cab Company, Charleston Black Cab Co., or

both—within the same Charleston market in connection with its transportation and taxicab services. Plaintiff contends that CBCC operates a website, www.charlestonblackcabco.com, and that through that website and nearly identical domain names, CBCC markets and promotes its transportation and taxicab services with the same or similar mark. Plaintiff further alleges that its first use of the Mark, through its predecessors, predates CBCC's use of the same or similar mark.

Plaintiff filed its Complaint on May 16, 2014, asserting that this Court has subject matter jurisdiction over the present matter pursuant to 28 U.S.C. §§ 1331 and 1338 because this action arises under the Lanham Act, 15 U.S.C. § 1051 *et seq.* Plaintiff's Complaint alleges three causes of action against CBCC and Mustafa: (1) false designation of origin and unfair competition, in violation of 15 U.S.C. § 1125(a); (2) cybersquatting, in violation of 15 U.S.C. § 1125(d); and (3) violation of the South Carolina Unfair Trade Practices Act, S.C. Code Ann. § 39-5-10-20(a) *et seq.* ("SCUTPA"). Plaintiff demands a jury trial and seeks both injunctive relief and money damages, "including Defendants' profits, Plaintiff's lost sales, the costs of the action[,] and attorneys' fees."[1] (Pl.'s Compl. 9, ECF No. 1).

On August 22, 2014, Defendants filed a Motion to Dismiss pursuant to Rule 12(b)(1), (6), and (7) of the Federal Rules of Civil Procedure.[2] Plaintiff filed its Response in Opposition to Defendants' Motion to Dismiss on September 4, 2014, arguing, *inter alia*, that Defendants have

---
1. It is unclear which claims Plaintiff would have this Court submit to a jury. Additionally, it is unclear whether, or as to which claims, Plaintiff requests declaratory relief.
2. Although Defendants' Motion to Dismiss is quite difficult to understand and interpret, Defendants appear to assert the following arguments in support of dismissing Plaintiff's Complaint: (1) Plaintiff has failed to state a claim against Mustafa in his individual capacity; (2) Plaintiff's claims must be adjudicated in state court because "[n]o interstate commerce is disputed"; (3) Plaintiff has failed to state a claim for relief under the Lanham Act based on common law trademark rights for various reasons; (4) Plaintiff failed to comply with the Lanham Act's administrative procedures and has not pursued its administrative remedies under either the Lanham Act or South Carolina trademark law; and (5) Plaintiff failed to join YCC and its predecessors in interest as indispensable parties under Rule 19. Defendants also request, in the alternative, that Plaintiff be required "to provide a more definite and certain statement as to all causes of action set forth in the Complaint" pursuant to Rule 12(e). (Defs.' Mot. to Dismiss 1; Defs.' Mem. in Supp. of Mot. to Dismiss 1).

3

asked the Court to consider matters and materials outside of the Complaint, thereby converting portions of their Motion to Dismiss into a motion for summary judgment under Rule 12(d). Accordingly, Plaintiff contends that Defendants' Motion to Dismiss must be evaluated under both the corresponding Rule 12 standards and under Rule 56's summary judgment standard. On September 12, 2014, Defendants filed an inflammatory, six-page Reply that failed to cite a single legal authority. Clearly frustrated, Plaintiff filed a Sur-Reply on September 15, 2014.[3]

On September 18, 2014, Plaintiff filed a Motion for Preliminary Injunction pursuant to Rule 65 of the Federal Rules of Civil Procedure, seeking to enjoin Defendants from using the Mark or any confusingly similar variation thereof. On October 6, 2014, Defendants filed a Response in Opposition to Plaintiff's Motion for Preliminary Injunction.[4] On October 15, 2014, Plaintiff filed a Reply in Support of its Motion for Preliminary Injunction. More recently, on January 16, 2015, Plaintiff filed a Supplemental Declaration of Toan Dao, Plaintiff's owner, in support of its Motion for Preliminary Injunction.

As noted above, on January 20, 2015, the Court held a hearing on the pending motions. Following extensive argument by the Parties and after careful consideration, the Court denied Defendants' Motion to Dismiss on all grounds and as to all arguments asserted therein, with the sole exception of Defendants' contention that Plaintiff's Complaint fails to state a claim against Mustafa. Because the Parties' briefing did not adequately address this point, the Court reserved ruling on the issue. Additionally, as detailed further below, the Court deferred ruling on

---
3. Under the Local Civil Rules, "[r]eplies to responses are discouraged." Local Civ. Rule 7.07 (D.S.C.). Moreover, neither the Federal Rules of Civil Procedure nor the Local Civil Rules permit the filing of a sur-reply without leave of the Court. In the present case, Plaintiff did not seek or obtain leave to file a sur-reply. Accordingly, Plaintiff's Sur-Reply is not properly before the Court and will not be considered in ruling on Defendants' remaining argument.
4. Within their Response, Defendants attempted to move for a Rule 65 preliminary injunction enjoining Plaintiff from using the Mark. However, Defendants withdrew their request at the January 20, 2015 hearing, acknowledging that their purported motion was procedurally improper.

4

Plaintiff's Motion for Preliminary Injunction to allow the Parties to conduct expedited discovery. This Order is intended to memorialize, supplement, and amend the Court's oral rulings.

## LEGAL STANDARDS

### I.     Rule 12(b)(6) of the Federal Rules of Civil Procedure

A motion to dismiss pursuant Rule 12(b)(6) for failure to state a claim upon which relief can be granted "challenges the legal sufficiency of a complaint." *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009) (citations omitted); *see also Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) ("A motion to dismiss under Rule 12(b)(6) . . . does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses."). To be legally sufficient a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), the Supreme Court "articulated a 'two-pronged approach' to assessing the sufficiency of a complaint." *Robertson v. Sea Pines Real Estate Cos.*, 679 F.3d 278, 288 (4th Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). First, the complaint must "contain factual allegations in addition to legal conclusions." *Id.* Under Rule 8's pleading standard, "a formulaic recitation of the elements of a cause of action will not do," *id.* (quoting *Twombly*, 550 U.S. at 555) (internal quotation marks omitted), and "'naked assertion[s]' devoid of 'further factual enhancement'" will not suffice, *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). Second, the complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). More specifically, the

5

complaint must demonstrate that the plaintiff's right to relief is more than a mere possibility, but it need not rise to the level of evincing a probability of success. *Id.* Accordingly, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

When ruling on a Rule 12(b)(6) motion to dismiss, the trial judge must accept as true all of the facts alleged in the plaintiff's complaint and construe all reasonable inferences in favor of the plaintiff. *E.g.*, *E.I. du Pont de Nemours & Co.*, 637 F.3d at 440. The court must determine whether the allegations give rise to a plausible right to relief, *Iqbal*, 556 U.S. at 679; however, it should "not accept 'legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments,'" *United States ex rel. Nathan v. Takeda Pharm. N. Am., Inc.*, 707 F.3d 451, 455 (4th Cir. 2013) (quoting *Wag More Dogs, LLC v. Cozart*, 680 F.3d 359, 365 (4th Cir. 2012)); *see also Iqbal*, 556 U.S. at 678 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."). Thus, although the court must accept a plaintiff's well-pleaded factual allegations as true for purposes of ruling on the motion, the complaint must nevertheless satisfy the "two-pronged" test articulated by the Supreme Court. *Iqbal*, 556 U.S. at 679.

## II.     Plaintiff's Motion for Preliminary Injunction

A preliminary injunction is "an extraordinary remedy involving the exercise of a very far-reaching power, which is to be applied only in the limited circumstances which clearly demand it." *Centro Tepeyac v. Montgomery Cnty.*, 722 F.3d 184, 188 (4th Cir. 2013) (en banc) (quoting *Direx Israel, Ltd. v. Breakthrough Med. Corp.*, 952 F.2d 802, 811 (4th Cir. 1991)) (internal quotation marks omitted). "The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held." *United States v. South*

*Carolina*, 720 F.3d 518, 524 (4th Cir. 2013) (quoting *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981)) (internal quotation marks omitted). This unique pretrial remedy provides relief "*pendente lite* of the type available after trial." *Real Truth About Obama, Inc. v. Fed. Election Comm.* (*Real Truth*), 575 F.3d 342, 345 (4th Cir. 2009), *cert. granted*, *judgment vacated*, 559 U.S. 1089 (2010), *adhered to in part sub nom. The Real Truth About Obama, Inc. v. F.E.C.*, 607 F.3d 355 (4th Cir. 2010). Because granting a motion for preliminary injunctive relief "requires that a district court, acting on an incomplete record, order a party to act, or refrain from acting, in a certain way," "[t]he danger of a mistake in this setting is substantial." *Hughes Network Sys., Inc. v. InterDigital Commc'ns Corp.*, 17 F.3d 691, 693 (4th Cir. 1994) (quoting *Am. Hosp. Supply Corp. v. Hosp. Prods., Ltd.*, 780 F.2d 589, 593 (7th Cir. 1986)) (internal quotation marks omitted). Accordingly, the decision whether to grant a preliminary injunction is committed to the equitable discretion of the district court. *See Salazar v. Buono*, 559 U.S. 700, 714 (2010); *Christopher Phelps & Assocs., LLC v. Galloway*, 492 F.3d 532, 543 (4th Cir. 2007).

The Supreme Court set forth the current standard for granting preliminary injunctive relief in *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7 (2008). To obtain a preliminary injunction, the moving party "must demonstrate that (1) they are likely to succeed on the merits; (2) they will likely suffer irreparable harm absent an injunction; (3) the balance of hardships weighs in their favor; and (4) the injunction is in the public interest." *League of Women Voters of N.C. v. North Carolina*, 769 F.3d 224, 236 (4th Cir. 2014) (citing *Winter*, 555 U.S. at 20). Moreover, *Winter* requires that each preliminary injunction factor "be 'satisfied as articulated.'" *Pashby v. Delia*, 709 F.3d 307, 320–21 (4th Cir. 2013) (quoting *Real Truth*, 575 F.3d at 347). Therefore, the movant bears a heavy burden in seeking a preliminary injunction. *See id.* at 321.

7

## DISCUSSION

### I.   Defendants' Motion to Dismiss

As noted above, the Court denied Defendants' Motion to Dismiss at the January 20, 2015 hearing but deferred ruling on the question of whether Plaintiff's Complaint fails to state a claim as to Mustafa.[5]  Having carefully considered Plaintiff's Complaint, the Parties' arguments, and the applicable case law, the Court concludes that Plaintiff has stated a plausible claim for relief against Mustafa under the Lanham Act.[6]  Accordingly, for the reasons detailed below, the Court also denies Defendants' Motion to Dismiss as it relates to this sole remaining issue.

In their Motion to Dismiss, Defendants contend that "Plaintiff has not ple[ade]d any facts sufficient to state a claim against Mr. Mustafa as an individual."  (Defs.' Mem. in Supp. of Mot. to Dismiss 1).  "[I]n general, an individual corporate officer or director is not subject to personal liability simply by virtue of his office; such liability attaches only if the corporate veil can be pierced which appropriately occurs only in certain extraordinary circumstances."  *Stafford Urgent Care, Inc. v. Garrisonville Urgent Care, P.C.*, 224 F. Supp. 2d 1062, 1065 (E.D. Va.

---

5.   As a threshold matter, it is important to again note that although Defendants couch their filing as a Motion to Dismiss, they repeatedly ask the Court to consider matters outside of the pleadings.  Indeed, in addition to attaching twelve exhibits to their Motion to Dismiss, Defendants attempt to "reserve[] the right to supplement th[eir] memorandum of support as certain relevant evidence becomes available."  (Defs.' Mem. in Supp. of Mot. to Dismiss 2).  Accordingly, Plaintiff correctly notes that Defendants have, in effect, moved this Court for summary judgment.  However, because Defendants' arguments are primarily aimed at the allegations in Plaintiff's Complaint and because the Parties have not engaged in discovery, the Court will not convert Defendants' Motion to Dismiss into a motion for summary judgment.  *See Gay v. Wall*, 761 F.2d 175, 178 (4th Cir. 1985).

6.   Because Defendants do not address Plaintiff's Second and Third Causes of Action in their Motion to Dismiss, the discussion that follows analyzes only Plaintiff's First Cause of Action under the Lanham Act.  However, the Court also concludes that Plaintiff has stated a plausible claim for relief against Mustafa with regard to both Plaintiff's cybersquatting claim and its SCUTPA cause of action.  *See Virtual Works, Inc. v. Volkswagen of Am., Inc.*, 238 F.3d 264, 268–71 (4th Cir. 2001) (outlining the framework for addressing a cybersquatting claim under 15 U.S.C. § 1125(d)); *Flentye v. Kathrein*, 485 F. Supp. 2d 903, 913–15 & n.10 (N.D. Ill. 2007) (discussing 15 U.S.C. § 1125(d) and concluding that the plaintiffs' cybersquatting claim survived a Rule 12(b)(6) motion to dismiss); *Plowman v. Bagnal*, 450 S.E.2d 36, 38 (S.C. 1994) ("[W]e hold that in private actions under the UTPA, directors and officers are not liable for the corporation's unfair trade practices unless they personally commit, participate in, direct, or authorize the commission of a violation of the UTPA.").  *See generally Polo Fashions, Inc. v. Craftex, Inc.*, 816 F.2d 145, 149 (4th Cir. 1987) ("A corporate official may be held personally liable for tortious conduct committed by him, though committed primarily for the benefit of the corporation.  This is true in trademark infringement and unfair trade practices cases.").

8

2002).  However, the veil-piercing inquiry "does not end the analysis" of an individual defendant's personal liability under the Lanham Act.  *Id.*; *see also Polo Fashions, Inc v. BDB, Inc.*, No. 82-315-14, 1983 WL 44362, at *1 (D.S.C. Aug. 23, 1983) ("Imposition of personal liability in a trademark infringement action does not hinge upon a finding that a plaintiff has pierced the corporate veil.  Trademark infringement sounds in tort, not contract.  A corporate officer is individually liable for the torts he commits, and he cannot shield himself behind the corporate veil." (citations omitted)).

It is well-established that individual corporate officers and directors can be held personally liable for violations of the Lanham Act.  *See Stafford Urgent Care, Inc.*, 224 F. Supp. 2d at 1065.  Indeed, the plain language of 15 U.S.C. § 1125(a) creates individual liability for false designation of origin and unfair competition claims under the Lanham Act.  *See Chattery Int'l, Inc. v. JoLida, Inc.*, No. CIV. WDQ-10-2236, 2011 WL 4527337, at *4 (D. Md. Sept. 27, 2011) ("[T]he president of a company allegedly violating 15 U.S.C. § 1125(a), is a 'person' covered under the statute."); *Axion Power Battery Mfg., Inc. v. T&L Sales, Inc.*, No. 02:07-CV-0224, 2009 WL 385539, at *3 (W.D. Pa. Feb. 13, 2009) ("The plain language of the sections of the Lanham Act addressing trademark infringement and unfair competition create individual liability for damages under the Act because both sections begin with the language 'Any person who . . . .'" (quoting *Heartland Payment Sys., Inc. v. Merch. Servs. of Am., Corp.*, No. CIV.A. 06-2811 (MLC), 2006 WL 3779764, at *5 (D.N.J. Dec. 20, 2006)) (internal quotation marks omitted)).  Moreover, in *Polo Fashions, Inc. v. Craftex, Inc.*, 816 F.2d 145, 149 (4th Cir. 1987), the Fourth Circuit reversed the judgment of the district court on various Lanham Act and pendent state law claims "insofar as it exonerated the individual defendants."  *Id.* at 147.  Noting that the infringement at issue was willful and that each of the individual defendants participated in it, the

9

court clearly held that "in trademark infringement and unfair trade practices cases," "[a] corporate official may be held personally liable for tortious conduct committed by him, though committed primarily for the benefit of the corporation." *Id.* at 149.[7]

Here, Plaintiff's Complaint alleges that Mustafa "is an officer of CBCC and has the ability to direct and control Defendant's activities." (Pl.'s Compl. 1, ¶ 3). Additionally, Plaintiff alleges that CBCC, "*through the direction of Mustafa*, is using the mark Charleston Black Cab Company and/or Charleston Black Cab Co. . . . in association with transportation and taxi services . . . in the same market that Plaintiff provides its services" and "to the same customers to whom Plaintiff provides its services." (*Id.* at ¶¶ 17–19 (emphasis added)). Plaintiff further alleges that CBCC, "*through the direction of Mustafa*, maintains a website at the domain www.charlestonblackcabco.com," which it uses "to market and promote its transportation and taxi services." (*Id.* at ¶¶ 22–23 (emphasis added)). Thus, Plaintiff specifically alleges that

---

7.   A number of other courts in this circuit and elsewhere have also concluded that corporate officers may be held personally liable for violations of the Lanham Act. *See, e.g.*, *Donsco, Inc. v. Casper Corp.*, 587 F.2d 602, 606 (3d Cir. 1978) ("A corporate officer is individually liable for the torts he personally commits and cannot shield himself behind a corporation when he is an actual participant in the tort. This principle applies where the conduct constitutes unfair competition. The fact that an officer is acting for a corporation also may make the corporation vicariously or secondarily liable under the doctrine of respondeat superior; it does not however relieve the individual of his responsibility." (citations omitted)); *Deniece Design, LLC v. Braun*, 953 F. Supp. 2d 765, 779 (S.D. Tex. 2013) ("The Court agrees that an officer or director who actively and knowingly causes confusion, mistake or deception can be personally liable under section 1125(a)." (collecting cases)); *Branhaven, LLC v. BeefTek, Inc.*, No. CIV. WDQ-11-2334, 2012 WL 414808, at *4 (D. Md. Feb. 7, 2012) ("An officer 'cannot hide behind the corporation' when he directs, authorizes, or participates in a violation of the Lanham Act." (quoting *Maryland v. Universal Elections*, 787 F. Supp. 2d 408, 416 (D. Md. 2011))); *Universal Furniture Int'l, Inc. v. Frankel*, 835 F. Supp. 2d 35, 48 (M.D.N.C. 2011) ("[I]n addition to Defendant's direct participation, this court finds that Defendant, a corporate officer who was responsible for 'order fulfillment,' 'flow of product,' '[i]nvoicing,' and handling customers' 'order inquiries,' is liable for contributory infringement because he took part in the distribution of a product that he knew and had reason to know was marketed with the aid of a false designation of origin."), *aff'd*, 538 F. App'x 267 (4th Cir. 2013); *Hair Assocs., Inc. v. Nat'l Hair Replacement Servs., Inc.*, 987 F. Supp. 569, 590–91 (W.D. Mich. 1997) ("'Employees of corporations are not shielded from individual liability under the Lanham Act solely because their actions were taken within the scope of their employment.' Put simply, a corporate officer's active participation in infringing activity is sufficient to subject him or her to joint and several liability for trademark infringement with the corporation." (quoting *Two Men & a Truck/Int'l, Inc.*, No. 5:94-CV-162, 1995 WL 549278, at *4 (W.D. Mich. July 24, 1995))); *Bambu Sales, Inc. v. Sultana Crackers, Inc.*, 683 F. Supp. 899, 913–14 (E.D.N.Y. 1988) ("[P]ersonal liability for trademark infringement and unfair competition is established 'if the officer is a moving, active conscious force behind [the defendant corporation's] infringement. . . . Further, in determining whether the officer's acts render him individually liable, '[it] is immaterial whether . . . [he] knows that his acts will result in an infringement.'" (alteration in original) (citations omitted) (quoting *Polo Fashions, Inc. v. Branded Apparel Merch.*, 592 F. Supp. 648, 652–53 (D. Mass. 1984)) (internal quotation marks omitted)).

Mustafa directed and controlled, or had the ability to control, the very activities, actions, and conduct of CBCC presently at issue. These allegations of authorization or active participation on the part of Mustafa are sufficient to state a plausible claim for relief under the Lanham Act. *See Carell v. Shubert Org., Inc.*, 104 F. Supp. 2d 236, 271 (S.D.N.Y. 2000).

Defendants' argument that Mustafa "has always acted on behalf of and as an agent for the Charleston Black Cab Company" also misses the mark. (Defs.' Mem. in Supp. of Mot. to Dismiss 1). Again, under the Lanham Act, "[a] corporate official may be held personally liable for tortious conduct committed by him, though committed primarily for the benefit of the corporation." *Polo Fashions, Inc.*, 816 F.2d at 149. "[T]he fact that an officer was an agent of the corporation, acting for its benefit, will not shield that officer from tort liability, but instead may only make the corporation secondarily liable." *Stafford Urgent Care, Inc.*, 224 F. Supp. 2d at 1066 (citing *Donsco, Inc.*, 587 F.2d at 606); *see also Unicasa Mktg. Grp., LLC v. Spinelli*, No. CIVA 04-CV-4173 PGS, 2007 WL 757909, at *6 (D.N.J. Mar. 8, 2007) ("Under the Lanham Act an employee is not shielded from individual liability solely because the infringing actions were within the scope of their employment." (citing *Metromedia Steakhouses Co., L.P. v. Resco Mgmt., Inc.*, 168 B.R. 483, 486 (D.N.H. 1994))). Accordingly, having carefully considered Plaintiff's Complaint, the Parties' arguments, and the applicable case law, the Court hereby denies Defendants' Motion to Dismiss as to Mustafa.

## II.     Plaintiff's Motion for Preliminary Injunction

As previously noted, the Court entertained argument on Plaintiff's Motion for Preliminary Injunction at the January 20, 2015 hearing. At that time, the Court noted several concerns with granting Plaintiff's requested relief based on the limited record before the Court. Thus, the Court deferred ruling on the Motion for Preliminary Injunction to allow the Parties to

11

conduct expedited discovery.[8] However, after further consideration, the Court instead denies Plaintiff's Motion for Preliminary Injunction without prejudice and with leave to renew and refile upon the completion of discovery as set forth in the Amended Expedited Scheduling Order (ECF No. 31). To prevent or mitigate any harm to either Plaintiff or Defendants in the interim, the Parties shall immediately confer and submit within ten days of the date of this Order a proposed non-disparagement consent order for the Court to review and consider.

## CONCLUSION

For the foregoing reasons, it is **ORDERED** that Defendants' Motion to Dismiss is **DENIED**. It is **FURTHER ORDERED** that Plaintiff's Motion for Preliminary Injunction is **DENIED WITHOUT PREJUDICE AND WITH LEAVE TO RENEW AND REFILE**. As discussed and agreed to at the January 20, 2015 hearing, the Parties are hereby **ORDERED** to submit within ten (10) days of the date of this Order a proposed consent order regarding the Parties' non-disparagement agreement for the Court's review and consideration.

AND IT IS SO ORDERED.

_____
PATRICK MICHAEL DUFFY
United States District Judge

**February 13, 2015**
**Charleston, South Carolina**

---

8. The Court also indicated, without objection, that it was considering consolidating the matter with the trial on the merits pursuant to Rule 65(a)(2) of the Federal Rules of Civil Procedure. However, after further review of Plaintiff's Complaint, it appears that Plaintiff has demanded a jury trial on some or all of the claims asserted therein. Although the Court declines to address at this time the propriety of a jury determination as to each of Plaintiff's causes of action and requested remedies, the Court will no longer consider and will not proceed with consolidation in order to ensure that Plaintiff's right to a jury trial is properly preserved.